United States District Court
Southern District of Texas
**ENTERED**
August 15, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BETTY J. CONNER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:18-CV-657 |
| | § | |
| ANDREW SAUL,[1] | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Betty J. Conner ("Plaintiff") filed this suit seeking review of the denial of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), as well as review of the denial of supplemental security income under Title XVI of the Act. ECF No. 1.[2] The Parties filed cross-motions for summary judgment. ECF Nos. 13, 14. Based on the briefing and the record, the Court DENIES Plaintiff's motion and GRANTS Defendant Andrew Saul's ("Commissioner") motion.

---

[1] The suit was originally filed against Nancy A. Berryhill, the then-Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been automatically substituted as Defendant.

[2] On January 23, 2020, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 11.

## I.     BACKGROUND

Plaintiff is a 51-year-old woman who worked at Wal-Mart in the deli and accounting department for over twenty years. R. 35, 50. She has suffered from depression and other mental health conditions, particularly since her husband died in November of 2012. R. 40.

On September 6, 2013, Plaintiff filed an application under Titles II and XVI, seeking benefits beginning on July 8, 2013 based on stroke, diabetes, and neuropathy. R. 74, 181-199.[3] On December 17, 2013, the Commissioner denied her claims. R. 122. Plaintiff requested reconsideration, and the Commissioner again denied her claims on March 17, 2014. R. 128, 132. On March 28, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 136. ALJ Daniel E. Whitney conducted a hearing on July 9, 2014. R. 30-73. Cheryl L. Swisher, a vocational expert ("VE"), testified at the hearing. R. 69-72. Plaintiff also testified. R. 34-69. On September 24, 2014, the ALJ denied Plaintiff's application for benefits. R. 13-25.[4]

---

[3] The relevant time period is July 8, 2013—Plaintiff's alleged onset date—through December 31, 2018—Plaintiff's last insured date. R. 16. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[4] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at Step Five. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. R. 18. At Step Two, the ALJ found Plaintiff has the following medically determinable and

Plaintiff requested the Appeals Council to review the ALJ's decision, and on January 9, 2015, the Appeals Council denied Plaintiff's request for review. R. 2-4; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

On February 21, 2018, Plaintiff filed this civil action. ECF No. 1. In this appeal, Plaintiff asserts that the ALJ erred in evaluating medical opinion evidence and, as a result, the RFC determination is not supported by substantial evidence. ECF No. 13 at 6-10.

## II.    STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

The court shall have power to enter, upon the pleadings and transcript

---

severe impairments: obesity, hypertension, peripheral neuropathy, diabetes mellitus, degenerative disc disease, depression, and anxiety. R. 18-19. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with affective disorders (Listing 12.04) or anxiety-related disorders (Listing 12.06). R. 19-20. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work, particularly that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and push and pull 20 pounds occasionally and 10 pounds frequently. R. 20. However, Plaintiff cannot climb ropes, ladders, or scaffolds and can only occasionally balance, stoop, kneel, crouch, and crawl. R. 20. Additionally, Plaintiff is limited to simple jobs, can tolerate only occasional interaction with co-workers and supervisors, and cannot perform production-rate pace jobs. R. 20. At Step Four, the ALJ found that Plaintiff is not capable of performing her past relevant work as a cashier and accounting clerk. R. 23. However, at Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as mail clerk, courier, file clerk, and photocopier, and therefore Plaintiff is not disabled as defined under the Act. R. 23-24.

of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Nonetheless, the Supreme Court recently reaffirmed that "the threshold for [substantial evidence] is not high." *Biestek*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, nor try the

issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argues the ALJ failed to weigh and evaluate medical source opinions in the record as required by 20 C.F.R. §§ 404.1527(c) and 416.927(c), particularly an evaluation performed by her treating psychiatrist Martin Kram ("Dr. Kram"). ECF No. 13 at 6-10. Plaintiff argues that Dr. Kram's opinion, supported by the other evidence of record, demonstrates that Plaintiff had significant functional limitations associated with her mental health conditions, and the ALJ's failure to consider these

limitations in the RFC analysis made his decision unsupported by substantial evidence. *Id.* at 8-10. Commissioner argues that the ALJ properly discounted Dr. Kram's opinion, that the other opinions in the record support the ALJ's RFC analysis, and that the decision was thus based on substantial evidence. ECF No. 15 at 4-9. The Court agrees with Commissioner.

## A. Legal Standards To Evaluate A Treating Physician's Opinion

Generally, the ALJ must afford controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairment when it is well-supported by medical evidence and consistent with other evidence of record. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). "When an ALJ rejects the opinion of the treating physician, the [Fifth Circuit has] held that, 'absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527.'" *Qualls*, 339 F. App'x at 465 (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)); *accord*; *Davis v. Berryhill*, No. 16-CV-429, 2017 WL 3701689, at *8 (N.D. Tex. Aug. 10, 2017), *report and recommendation adopted*, 2017 WL 3674856 (Aug. 25, 2017). Under the statutory analysis, the ALJ must evaluate: "(1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of

the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations." *Bass v. Saul*, No. 19-CV-1525, 2020 WL 3405794, at *10 (S.D. Tex. June 19, 2020) (citing 20 C.F.R. § 404.1527(c)); *accord Jones v. Colvin*, 638 F. App'x 300, 304 (5th Cir. 2016); *Qualls*, 339 F. App'x at 465.

The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and a treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton*, 209 F.3d at 455-56 (quotations omitted); *accord Bass*, 2020 WL 3405794, at *10. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts 'where the treating physician's evidences is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.'" *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 455-56). Ultimately, the ALJ is "entitled to determine the credibility of medical experts . . . and to weigh their opinions and testimony accordingly." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

### B. The ALJ Discounted Dr. Kram's Medical Opinion.

The parties here identify two entries in the record by Plaintiff's treating psychiatrist, Dr. Kram: (1) treatment notes from March 12, 2014 ("March Notes"),

R. 631-33; and (2) a medical source statement dated May 7, 2014 ("May Opinion"),

R. 637-40.[5] In the March Notes, Dr. Kram documented that Plaintiff had experienced

panic attacks, mania/anger outbursts, depression, and childhood trauma. R. 633. He

performed a mental status evaluation and found Plaintiff's affect was labile and

constricted, thought process was tangential at times, and mood was "up and down."

R. 633. However, he also found that Plaintiff had good judgment and insight; did

not experience delusions, suicidal ideations, or hallucinations; and did not respond

to internal stimuli. R. 633. Dr. Kram diagnosed Plaintiff with Bipolar Disorder,

Panic Disorder, and Post-Traumatic Stress Disorder ("PTSD"), among others, and

gave Plaintiff a GAF score of 58/60. R. 633.[6] Dr. Kram recommended Plaintiff start

outpatient treatment and prescribed her medication. R. 633.

In the May Opinion, Dr. Kram completed a check-box form indicating that

Plaintiff's mental health symptoms significantly affected her ability to complete

work tasks and function in a work environment. R. 637-40. Dr. Kram found Plaintiff

---

[5] The record also contains progress notes from a visit with Dr. Kram on May 7, 2014 ("May Notes"), the same day he issued the May Opinion. R. 634. Neither party points to these notes in their arguments; in fact, both appear to believe Plaintiff's only in-person interaction with Dr. Kram was at the March 12, 2014 visit. *See* ECF No. 13 at 7; ECF No. 15 at 4. In any event, the May Notes are consistent with the March Notes and thus do not change the Court's analysis.

[6] "The Global Assessment of Functioning ('GAF') is a 100–point scale used to report the clinician's judgment of the individual's overall level of psychological, social and occupational functioning." *Locure v. Colvin*, No. 14-CV-1318, 2015 WL 1505903, at *8 n.5 (E.D. La. Apr. 1, 2015). A GAF score of 51-60 indicates moderate symptoms or impairment in functioning, while a score of 41-50 indicates serious symptoms or impairment in functioning. *Id.* at *9 n.6. As discussed below, GAF scores are no longer considered a reliable method of determining disability. *Id.* at *10.

had marked to extreme limitations in her mental ability to perform unskilled work, except that Plaintiff only had slight limitations in her ability to understand and remember short and simple instructions. R. 639. Dr. Kram also found Plaintiff had marked to extreme limitations in her ability to respond appropriately to supervision, co-workers, and work pressures. R. 639-40. Ultimately, Dr. Kram opined that Plaintiff's impairments would cause her to miss more than four days of work per month and that Plaintiff was medically disabled. R. 640.

The ALJ summarized the March Notes and May Opinion in his decision and found the May Opinion could not be afforded controlling weight, despite the fact that Dr. Kram was Plaintiff's treating physician. R. 22-23. Instead, the ALJ afforded Dr. Kram's opinion little weight because he treated Plaintiff only once, did not have "insight on a longitudinal history of care," and issued an opinion that was inconsistent with his own treating records. R. 22-23.[7] Specifically, the ALJ found that, contrary to Dr. Kram's May Opinion, the March Notes were "relatively benign" because they contained an unremarkable mental examination and a moderate GAF score. R. 23. As a result, the ALJ gave more weight to the opinions of State Agency Medical Consultants ("SAMCs"), who found Plaintiff's impairments did not render

---

[7] As discussed above, there are records Plaintiff visited Dr. Kram at least twice. R. 633-34 (March and May Notes); *see also* R. 47-49, 55 (Plaintiff's testimony at the administrative hearing that she went to therapy with Dr. Kram every two months and that she knew Dr. Kram because he had treated her mother). However, Plaintiff does not argue the ALJ erred in this regard.

her disabled, because they were well-reasoned and consistent with other evidence in the record, R. 23.

### C. The ALJ Was Not Required To Discuss Each §§ 404.1527(c) And 416.927(c) Factor In Assigning Dr. Kram's Opinion Little Weight, But In Any Event, Did So Sufficiently.

After declining to afford a treating source's medical opinion controlling weight, an ALJ is usually required to provide a detailed analysis of the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Davis*, 2017 WL 3701689, at *8. However, an ALJ need not do so when "there is reliable medical evidence from a treating or examining physician controverting the opinions of the treating source." *Id.*; *see also Jones*, 638 F. App'x at 304; *Romo v. Berryhill*, No. 17-CV-2163, 2018 WL 4146416, at *3 (S.D. Tex. Aug. 30, 2018) ("An ALJ does not need to specifically enumerate § 404.1527(c)'s six factors when there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another, or when the ALJ has weighed the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion.") (quotations omitted).

This case is not like *Newton* where the ALJ rejected the treating specialist's opinion based solely on the testimony of a doctor who was not a specialist and had not examined the plaintiff. *Newton*, 209 F.3d at 456-58. To the contrary, there is

first-hand medical evidence that contradicts Dr. Kram's May Opinion. Mark Lehman ("Dr. Lehman"), a licensed psychologist with a Ph.D., examined Plaintiff and performed a consultative evaluation on December 9, 2013. R. 328-33. Dr. Lehman found that Plaintiff was fully oriented with judgment intact and that Plaintiff was able to perform several activities of daily living and care for her mother. R. 330-33. Whereas Dr. Kram opined that Plaintiff was disabled and would likely miss significant time from work as a result, Dr. Lehman found Plaintiff's symptoms may improve with treatment. R. 333.[8] In addition, Mary Henson ("Dr. Henson"), Plaintiff's primary care physician, twice found Plaintiff to be alert, cooperative, and not in acute distress during her mental status examination. R. 321, 626. Whereas Dr. Kram found Plaintiff to have marked and extreme limitations in all areas of functioning, Dr. Henson did not find any significant deficiencies, even after Plaintiff reported worsening symptoms. R. 319-23, 625-28.

The ALJ reviewed and relied on this evidence in reaching his conclusion to afford Dr. Kram's opinion little weight and to rely on the State agency consultants whose opinions he found were well reasoned and consistent with other substantial evidence. R. 23 (citing to 3F Dr. Henson's medical records, and 4F Dr. Lehman's

---

[8] "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *accord Locure*, 2015 WL 1505903, at *13.

report). The ALJ, therefore, was not required to perform a detailed analysis of the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors. *See, e.g.*, *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (affirming decision not to afford treating physician opinion controlling weight and finding the ALJ was not required to consider each *Newton* factor because the record contained reliable medical evidence contradicting the treating physician's opinion); *Gonzalez v. Colvin*, No. 16-CV-659, 2017 WL 2538595, at *5 (W.D. Tex. June 12, 2017) (finding it unnecessary for the ALJ to perform the six-factor analysis because there was first-hand medical evidence contradicting the treating physician); *Locure*, 2015 WL 1505903, at *13 (same).

In any event, the ALJ sufficiently performed the six-factor analysis in evaluating Dr. Kram's opinion. He addressed the first three factors—the length of treatment, frequency of examination, and nature and extent of the treatment relationship—when he recognized that Dr. Kram had treated Plaintiff once and had not established a longitudinal history of care. R. 22-23. The ALJ addressed the next two factors—supportability and consistency—when he recognized that Dr. Kram's opinion was inconsistent with his own treatment notes and gave greater weight to the SAMCs as supported by other evidence of record. R. 23. The ALJ also addressed the sixth factor—specialization—when he recognized Dr. Kram as a treating

psychologist. R. 22-23.[9] Plaintiff has identified no "other factors" that the ALJ should have considered.

"*Newton* requires only that the ALJ consider each of the § 404.1527[c] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not recite each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 08-CV-672, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010) (quotations and alterations omitted). Therefore, the ALJ sufficiently perform the six-factor analysis under *Newton* in discounting Dr. Kram's opinion. *See, e.g.*, *Jones*, 638 F. App'x at 304-305 (finding the ALJ sufficiently discussed each of the *Newton* factors, should such a discussion have been required); *Stafford*, 402 F. Supp. 2d at 724-25 (finding ALJ sufficiently considered the six factors when they were implicit in the ALJ's discussion, even though he did not "specifically enumerate and discuss each regulatory factor in outline, separately numbered paragraphs, or other similarly structured form").[10]

---

[9] Dr. Kram is a psychiatrist, rather than a psychologist. *See* R. 633-34 (March Notes identifying Dr. Kram as a psychiatrist and neuroscientist). However, again, Plaintiff does not identify this as an error and in fact refers to Dr. Kram as both a psychologist and psychiatrist throughout her brief. *See, e.g.*, ECF No. 13 at 7.

[10] Plaintiff makes the conclusory statement that the ALJ "fail[ed] to properly assess *each* medical source's findings according to the criteria required by sections 404.1527 and 416.927 of the regulations." ECF No. 13 at 10; *see also id.* at 6. However, she does not apply this argument to Dr. Lehman's or Dr. Henson's opinions in and of themselves; she only discusses them as support for Dr. Kram's opinion. *Id.* at 9. Moreover, she does not identify how such an analysis, had it been necessary, would have affected the RFC. The Court, therefore, does not find it necessary to address whether the ALJ properly evaluated Dr. Lehman's opinion or Dr. Henson's notes. To the extent Plaintiff argues the ALJ failed to consider the SAMCs opinions pursuant to 20 C.F.R.

Plaintiff contends the opinions of examining physicians and specialists are normally afforded more weight under 20 C.F.R. §§ 404.1527(c) and 416.927(c). However, the ALJ is entitled to evaluate and determine the weight given to such evidence. *Scott*, 770 F.2d at 485; *see also Davis v. Astrue*, No. 10-CV-4770, 2012 WL 9392188, at *10 (S.D. Tex. Feb. 3, 2012) ("The ALJ, rather than the Court, has the duty to resolve conflicts in evidence."). The ALJ did not err in evaluating Dr. Kram's opinion and weighing it against the evidence of record.

### D. The ALJ Had Good Cause To Discount Dr. Kram's May Opinion.

The ALJ was entitled to give Dr. Kram's May Opinion less than controlling weight because it was conclusory and contradicted by other evidence of record.

"Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[,] but when these so-called reports are unaccompanied by thorough written reports, their reliability is suspect." *Roberts v. Colvin*, No. 12-CV-397, 2013 WL 4678556, at *5 (S.D. Miss. Aug. 30, 2013) (quotations and alterations omitted). Dr. Kram's May Opinion, which consists of a

---

§§ 404.1527(c) and 416.927(c), the point is also not well-taken. It is true that the ALJ must evaluate the opinions of SAMCs as he would any other source. *Escalante v. Colvin*, No. 14-CV-641, 2015 WL 1443000, at *9 (N.D. Tex. Mar. 31, 2015); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003). However, "[t]he ALJ is not required to expressly discuss each finding by an SAMC or discuss each factor listed in 20 C.F.R. § 404.1527(c)." *Escalante*, 2015 WL 1443000, at *9. The ALJ is merely "required to explain the weight given to the SAMCs' opinions in his decision." *Id.* (quotations and alterations omitted). Here, as discussed above, the ALJ accepted the SAMCs opinions to the extent they were consistent with the RFC because they were well-reasoned and consistent with other evidence. R. 23. The Court finds this analysis sufficient.

four-page, check-box form with almost no explanation, is precisely the type of conclusory opinion that need not be afforded controlling weight. *See, e.g.*, *Bass*, 2020 WL 3405794, at *13 ("The opinions of Dr. Ingram and Dr. Trinh are check-box forms, which are considered conclusory for good cause purposes and are entitled to no weight."); *Romo*, 2018 WL 4146416, at *4 ("[W]hen a treating physician's questionnaire is characterized by 'its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations,' it may not be entitled to controlling weight.") (quoting *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)).

In addition, contrary to Plaintiff's contentions, the May Opinion is inconsistent with the other evidence of record. For example, Dr. Lehman diagnosed Plaintiff with Bereavement and Dysthymic Disorder under partial medical control, R. 333, yet he found Plaintiff's thought processes to be "essentially normal," with no evidence of loose associations, tangential thinking, or circumstantiality. R. 332. He found that, although Plaintiff was preoccupied with her husband's death, there was no evidence of obsessions, delusions, paranoia, or hallucinations. R. 332. Plaintiff was "fully oriented to person, place and time" and her simple judgment was intact. R. 332-33. She was able to clean her home, shop for groceries, and take her

mother to numerous medical appointments. R. 330-31. Ultimately, Dr. Lehman found that Plaintiff's symptoms may improve with psychiatric treatment. R. 333.[11]

Likewise, treatment notes from Dr. Henson, Plaintiff's primary care physician, do not support the extreme nature of Dr. Kram's findings. While treating Plaintiff for peripheral neuropathy on October 15, 2013, Dr. Henson noted that Plaintiff had symptoms of depression due to family events, financial stressors, and illness, and prescribed her medication. R. 319-23.[12] However, during Plaintiff's mental status examination, Dr. Henson found Plaintiff to be alert, cooperative and well-groomed, and not in acute distress. R. 321. These observations are nowhere near the marked and extreme limitations in functioning that Dr. Kram assigned to Plaintiff.[13]

---

[11] Dr. Lehman assigned Plaintiff a GAF score of 50, which is lower than the one Dr. Kram assigned. R. 333. This does not change the Court's analysis for several reasons. First, as Plaintiff points out, GAF is no longer an accepted measure of a person's functioning level and has been removed from the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"). *Locure*, 2015 WL 1505903, at *10 ("[B]oth the American Psychiatric Association and the Commissioner have recently decided that GAF scores are not helpful in either medical or disability decision-making."). Second, when GAF scores were used, the purpose was to plan and evaluate treatment, not necessarily determine a person's ability to work. *Jackson v. Colvin*, No. 14-CV-756, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015), *report and recommendation adopted*, 2015 WL 7582339 (Nov. 25, 2015). The GAF score Dr. Lehman assigned thus has limited value and does not require the conclusion that his overall opinion supports Dr. Kram's findings, as Plaintiff contends.

[12] These symptoms included fatigue, loss of interest, poor sleep, irritability, and weight loss, among others. R. 319. However, they did not include suicide attempt or indecisiveness. R. 319.

[13] Plaintiff's sole reference to Dr. Henson in her brief is that she reported "severe and worsening" depression to Dr. Henson at a follow-up visit on January 15, 2014. ECF No. 13 at 9. However, the ALJ does not cite this visit in his decision, and Plaintiff does not identify his failure to do so as an error. *See Verbois v. Berryhill*, No. 18-CV-629, 2019 WL 3936444, at *8 (M.D. La. Aug. 20, 2019) ("An ALJ is not required to cite every single piece of medical evidence considered when reaching

The findings of the SAMCs also contradict Dr. Kram's May Opinion. The SAMCs found that Plaintiff's symptoms do not wholly compromise her ability to function and that Plaintiff was, at most, moderately limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. R. 97-101, 109-13. The ALJ recognized these limitations to the extent they were consistent with his RFC findings in part because they were supported by Dr. Lehman and Dr. Henson's observations. R. 23 (citing to 3F, Dr. Henson's records, and 4F, Dr. Lehman's report). The SAMCs determinations are therefore additional evidence that discounts Dr. Kram's May Opinion.[14]

Finally, Dr. Kram's May Opinion is inconsistent with his own treatment notes. *See, e.g., Bass*, 2020 WL 3405794, at *13 (good cause to discount treating physicians check box opinions that were inconsistent with their contemporaneous records).

---

his conclusion."). In any event, Dr. Henson's notes from the follow-up visit are almost exactly the same as the initial visit, which the ALJ considered. *See* R. 625-28 (describing symptoms of depression and finding Plaintiff was alert, cooperative and well-groomed, and not in acute distress). Therefore, even with Plaintiff's report of severe and worsening depression, Dr. Henson's treatment notes do not support Dr. Kram's findings.

[14] Two SAMCs reviewed Plaintiff's medical records at the reconsideration level. R. 92-115. In each instance, the SAMCs found that Plaintiff's complaints of limitations were not supported by the evidence and she was only partially credible. *E.g.,* R. 97-98 (Matthew Wong, Ph.D. 3/12/2014), R. 99 (Kavitha Reddy, M.D. 3/12/2014). Specifically, the SAMCs found Plaintiff to be "somewhat limited by psychologically based [symptoms], but the impact of these [symptoms] does not wholly compromise the ability to function independently, appropriately, and effectively on a sustained basis." R. 97, 109. They also found Plaintiff was "able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact [with] others, and respond to changes" in a work environment. R. 101, 113; *see also* R. 99-101, 111-13 (mental RFC analysis finding Plaintiff was either not significantly limited or only moderately limited in understanding and memory, sustained concentration and persistence, social interaction, and adaptation).

While the March Notes identify Plaintiff's mental health symptoms and their impact on her mood, affect, and thought process, they also indicate Plaintiff's perception, thought content, and judgment and insight were normal. R. 633. She was oriented, could identify presidents of the United States, spell "world" backwards, and perform simple math. R. 633. Moreover, Dr. Kram assigned Plaintiff a GAF score of 58/60, representing only moderate symptoms or impairment in functioning.[15] The Court agrees with the ALJ's determination that, overall, these treating records are "relatively benign" and "unremarkable." R. 23. They run contrary to Dr. Kram's findings that Plaintiff suffers from marked to extreme limitations in her ability to perform unskilled work and respond appropriately to supervision, co-workers, and work pressures. R. 638-40.[16]

While there is no doubt Plaintiff suffers from mental health conditions, the evidence does not support Dr. Kram's check-box findings on the severity of their impact on Plaintiff's functioning and ability to work. As a result, the ALJ was

---

[15] Contrary to the GAF score assigned by Dr. Lehman, the score assigned by Dr. Kram is relevant because the ALJ used it as a means to evaluate the reliability of the May Opinion, rather than as direct evidence of Plaintiff's functioning level or ability to work. R. 22-23; *see Jackson*, 2015 WL 7681262, at *3 ("It is within the ALJ's province to resolve conflicts when an assigned GAF score by a treating source conflicts with the treating source's own descriptions of the patient's mental symptoms and/or function.").

[16] In addition, Dr. Kram's finding that Plaintiff is disabled cannot be given weight, as such a determination is reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1); Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is disabled or unable to work. These determinations are legal conclusions that the regulation describes as reserved to the Commissioner.") (quotations and citation omitted).

entitled to give Dr. Kram's May Opinion less than controlling weight. *See, e.g.*, *Luckey v. Astrue*, 458 F. App'x 322, 326 (5th Cir. 2011) (finding good cause not to give treating physician's opinion controlling weight because it was unsupported by the record); *Romo*, 2018 WL 4146416, at *4 (finding good cause not to give treating physician's opinion controlling weight because it was brief and conclusory); *Stafford v. Barnhart*, 402 F. Supp. 2d 717, 724 (E.D. Tex. 2005) (finding it appropriate not to give treating physician's opinion controlling weight because it was internally inconsistent and inconsistent with the record as a whole).

### E.  The ALJ's RFC Determination Is Supported By Substantial Evidence.

"[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *accord Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ, as factfinder, must "weigh the evidence and . . . incorporate limitations into the RFC assessment that were most supported by the record." *Majkut v. Astrue*, No. 08-CV-92, 2009 WL 3110210, at *8 (N.D. Tex. Sept. 28, 2009) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Here, there is significant evidence—including Dr. Lehman's evaluation, Dr. Henson's treatment notes, the SAMCs' opinions, and Plaintiff's own

reports[17]—that support the RFC determination that Plaintiff can perform light work. And, as determined above, the ALJ did not err in discounting Dr. Kram's opinion.

Moreover, the ALJ did not completely disregard Dr. Kram's opinion and, in fact, incorporated some of his findings into the RFC. For example, the RFC limits Plaintiff to simple work, which Plaintiff recognizes is consistent with Dr. Kram's findings on her ability to understand and remember short and simple instructions. R. 20; ECF No. 13 at 8.[18] The RFC also limits Plaintiff to jobs not involving production-rate pace and to occasional interaction with co-workers and supervisors, R. 20, both clear considerations of Plaintiff's struggles with mental health. As to Dr. Kram's other findings, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record." *Bass*, 2020 WL 3405794, at *11.

The ALJ's RFC determination, therefore, is supported by substantial

---

[17] In her disability application, Plaintiff reported that she goes grocery shopping, cooks, washes clothes, and performs other household chores. R. 240-241, 256-257. Plaintiff also testified at the administrative hearing that she cooks, cares for three dogs, and reminds her mother to take medication. R. 49-50, 68.

[18] Plaintiff argues the ALJ was "mistaken as to the actual limitations opined by Dr. Kram," particularly that he was incorrect in stating Dr. Kram found Plaintiff to have marked to extreme limitations in understanding, remembering, and carrying out instructions. ECF No. 13 at 8, 10. The Court disagrees with Plaintiff's interpretation of the evaluation form, which shows Dr. Kram found primarily marked to extreme limitations under the heading, "Is ability to understand, remember, and carry out instructions affected by the impairment?" R. 639. In any event, Plaintiff has not demonstrated why such an error, if it did occur, would warrant reversal. *See Qualls*, 339 F. App'x at 464 ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.") (quotations omitted); *Bass*, 2020 WL 3405794, at *11 ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.") (quotations omitted).

evidence. *See, e.g.*, *Doucet v. Berryhill*, No. 18-CV-9048, 2019 WL 3526713, at *11 (E.D. La. May 13, 2019) ("Based on the entire record and the inconsistencies between Dr. Ceasar's examination notes and final conclusion, the ALJ's reasoning for affording Dr. Ceasar's opinion minimal weight is supported by substantial evidence. Moreover, the ALJ did not wholly disregard Dr. Ceasar's findings in the residual functional capacity analysis, but rather . . . incorporated them into the [RFC] finding. Plaintiff's [argument] that the ALJ improperly gave minimal weight to Dr. Ceasar's opinion does not merit relief."), *report and recommendation adopted*, 2020 WL 638855 (Feb. 11, 2020).

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for summary judgment, ECF No. 13, and GRANTS Commissioner's motion for summary judgment, ECF No. 14. The ALJ's decision denying Plaintiff benefits is AFFIRMED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas, on August 15, 2020.


_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**